## Case No. 16,418.

### UNITED STATES v. SUNDRY BOXES OF HAVANA SUGAR.

[2 Bond, 342.] [2]

District Court, S. D. Ohio. Feb. Term, 1870. [3]

CUSTOMS DUTIES — UNDERVALUATION — RIGHTS OF INNOCENT PURCHASERS.

1. Where property subject to duty is imported into the United States at a fraudulent undervaluation, a bona fide purchaser before the government has instituted any proceedings, or made its election to proceed in rem for a forfeiture, or to sue for the value of the property, obtains a good title, unaffected by the fraud in the entry.

2. The government, in such case, has no lien on the property in the possession of such purchaser, for the deficiency in the duty paid.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

[3] [Affirmed by the circuit court; case unreported.]

3. If such a lien existed in this case, a forfeiture could not be claimed, as that ground is not set up in the information.

At law.

Warner M. Bateman, Dist. Atty., and Henry Hooper, for the United States.

Collins & Herron, for claimants.

OPINION OF THE COURT. The proceeding in this case is an information in the name of the United States, in which the forfeiture of 123 boxes of sugar is claimed for having been imported in violation of law. The sugar was imported by the house of Perkins & Co., of New Orleans, and entered by them at the collector's office at that city. A large quantity, numbering some 300 boxes, was consigned to the house of Adolph Wood & Co., of Cincinnati, and was sold in different quantities, some at public auction, and some by private sales. In June last, upon information received by the surveyor of customs at this port, of fraud in the entry of the sugar at New Orleans, several lots were seized by his order in the possession of different purchasers, and libeled in this court. James H. Laws & Co. have intervened for seventy boxes of this sugar, and claim the property. They deny all knowledge of the fraud charged in the entry of the sugar, and claim title as innocent purchasers.

The only ground on which it is claimed that sugar is forfeited to the United States is the alleged entry of the sugar at a fraudulent undervaluation. The question of fraud is not now before the court, but it is conceded that the sugar was invoiced and entered as being of a grade or quality subject by law to a duty of three cents per pound, whereas the legal duty was five cents.

The questions now presented are: (1) Is the sugar subject to forfeiture in the hands of the claimants, the purchasers in this city? (2) If not forfeitable, has the government a lien on the sugar for the alleged deficiency of two cents on the pound, in the duty paid?

As to the first question, the evidence on the hearing proved conclusively that the various lots of sugar were sold openly in this market at their full value, without any knowledge by the house of Wood & Co., the consignees or the purchasers, or any reason for the suspicion that there was any irregularity or fraud in the importation and entry. The evidence on this point is not controverted by the attorney of the United States, and does not admit of a doubt. These claimants, therefore, insist that as innocent purchasers their title to the sugar is valid, and must be protected, and the case of Caldwell v. U. S., 8 How. [49 U. S.] 366, is cited as decisive of this question. In that case the supreme court held that under section 66 of the customs act of 1799 [1 Stat. 677], which gives to the United States, in cases of entries at a fraudulent undervaluation, the right to proceed in rem for the forfeiture of the property, or for the value thereof, a bona fide purchaser, before the United States had made its election as to the mode of proceeding, was invested with a good title, unaffected by any fraud in the entry of the property. The first section of the act of March 3, 1863 [12 Stat. 737], under which these informations are filed, though more specific and comprehensive in providing against frauds by undervaluations, is the same as section 66 of the act of 1799 in recognizing the alternative right of the government to proceed for a forfeiture or a recovery of the value of the property. The case cited is, therefore, directly in point on the question stated, and a decisive authority in favor of the rights of these claimants.

As to the other question, namely, whether the government has a lien on the sugar for the alleged deficiency of two cents a pound in the duty paid, the court entertains no doubt. It is clear that if there existed such a lien, it could not be enforced in these proceedings, for the obvious reason that no such claim is asserted in the informations, and no judgment or decree could be entered on such a basis. The only ground of forfeiture set forth is the alleged fraudulent undervaluation of the sugar; and this is the only ground on which the court could base its judgment of forfeiture. But, apart from this consideration, I am clear the United States has no lien on the sugar in the hands of bona fide purchasers for the deficiency in the duty paid.

It is claimed by the district attorney that the government has a lien for duties on all property or articles imported, in the entry of which a fraud has been committed, from the time of the commission of the fraud, and that such lien inheres in the property, and follows it, into whosesoever hands it may pass, and wherever it may be found. That the general principle is recognized and enforced as applicable to violations of the customs and revenue laws, may be conceded. But its application to the case before the court is not admitted. If it is law, as decided by the supreme court, that a bona fide purchaser, before the government has made its election as to the course it will pursue, acquires a valid title, it is not easy to perceive how that title can be impaired or affected by any supposed lien of the government on the property. It would seem, therefore, that the general doctrine of a continuing lien on property subject to forfeiture for fraud on the customs and revenue laws, does not apply to the statute referred to, denouncing and punishing the entry of property at an undervaluation. The construction given to that statute by the supreme court seems to imply a modification of the law on that particular case, in relation to the general doctrine of the government's lien for taxes or duties. The court more readily adopts this conclusion, for the reason that the enforcement of the lien asserted in this case would operate most inequitably upon the purchasers of the sugar in question.

As before stated, if there was a fraud in the entry, they are not implicated in it. They have purchased the sugar in open market, and paid its full market value. The claim now made of two cents a pound, the alleged deficiency in the duty paid, would be equal to seventeen per cent. on the value of the sugar, and would be a loss to them to that extent. Now, as this sugar passed through the custom-house at New Orleans, after being subject to the scrutiny of the government officers, and was put into the market with their voucher that the law had been complied with in its entry, it would be a grievous hardship that innocent purchasers should be the sufferers. And there would seem to be no necessity, so far as the protection of the interests of the government is concerned, for the enforcement of the rigid doctrine insisted on by the district attorney. The United States has a plain remedy by suit against the importers for the deficiency, if any, in the amount of duty paid. If by reason of the insolvency of the importers, or any other cause, this remedy is not available, the loss to the government is but a just penalty for the negligence, incapacity, or corruption of its custom-house officials. The seventy boxes of sugar seized will be released to the claimants.

This case was appealed by the United States to the circuit court, where the decree of the court below was affirmed.
[See Case No. 15,098.] ·